UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| JASON FARMER, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 3:24-CV-460-CHB |
| | ) |
| v. | ) |
| | ) |
| UNITED PARCEL SERVICE CO., and | ) **MEMORANDUM OPINION AND** |
| UNITED PARCEL SERVICE, INC., | ) **ORDER** |
| | ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendants United Parcel Service Co. and United Parcel Service, Inc.'s, Motion to Dismiss, [R. 5]. Plaintiff Jason Farmer responded, [R. 10 (Plaintiff's Amended Response to Defendants' Motion to Dismiss)], and Defendants replied, [R. 13 (Defendants' Reply in Support of Their Motion to Dismiss)]. The matter stands submitted for review. For the following reasons, Defendants' Motion to Dismiss will be denied without prejudice.

**I.     BACKGROUND**

Plaintiff Joseph Farmer, a now-fifty-year-old pilot, brought the instant employment discrimination action after being terminated by his employer. *See generally* [R. 1-2 (Complaint)]. As an initial matter, the Court notes that Plaintiff sues two entities, United Parcel Service *Co.* ("UPS Co.") and United Parcel Service, *Inc.* ("UPS Inc."), but it is not clear from the Complaint or the briefing which entity employed Plaintiff. In his Complaint, he alleges that UPS Inc. was his employer. *Id.* ¶ 3 ("The Plaintiff was employed by the United Parcel Service, Inc . . ."). However, Defendants dispute this in a footnote, saying "United Parcel Service, Inc. is the corporate entity that operates the UPS small package operation. [Plaintiff] was not employed by United Parcel

[1]

Service, Inc. at any point." [R. 5-1, p. 1 n.1]. In support, Defendants provide a declaration by David Smith, an employee of United Parcel Service, Co. *See* [R. 5-1, p.1 n.1 (citing [R. 5-2 (Smith Decl.)])]. However, the Court cannot consider this declaration at the motion to dismiss stage. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) ("[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss." (quoting *Weiner v. Klais & Co.,* 108 F.3d 86, 88 (6th Cir. 1997)); *see also infra* § II.

Defendants do not expand on this argument in the body of their motion, and Plaintiff did not directly address it in his response. Plaintiff did, however, state he was employed by UPS Co. in his response brief and made no mention of UPS Inc. *See* [R. 10, p. 1]. Accordingly, when the Court refers to his employer, UPS, it refers to UPS Co. The Court will not further address this issue and will not dismiss UPS Inc. at this time. However, it will order Plaintiff to file a status report as to whether he pursues any claims against UPS Inc.

Plaintiff's Complaint asserted the following claims: "wrongful termination: age discrimination in violation of Ky. Rev. Stat. § 344.040" (Count I), [R. 1-2, ¶¶ 43–50 (statutory citations updated)]; and "wrongful termination: disability discrimination in violation of Ky. Rev. Stat. § 344.040" (Count II), *id.* ¶¶ 51–57 (statutory citations updated).[1] As to relief, Plaintiff seeks "(a) injunctive relief in the form of an order that Defendant cease its discriminatory practices and reinstate the Plaintiff in comparable employment [and] (b) money damages for back pay, front pay, and humiliation and embarrassment." *Id.* at 13 (Prayer for Relief) (cleaned up).[2]

---

[1] Plaintiff states in his Response that his "claims arise under state *or federal* law." [R. 10, p. 2 (emphasis added)]. The Complaint, however, only states claims arising under Kentucky state law. *See* [R. 1-2].

[2] To the extent the page number listed on a filing differs from the page number assigned by the Court's electronic docketing system, the Court refers to the page number assigned by the docketing system.

According to the Complaint, UPS hired the plaintiff on May 6, 2019. [R. 1-2, ¶ 7]. Before beginning his training with UPS, Plaintiff underwent a double hip replacement surgery necessitated by a congenital birth defect. *Id.* ¶¶ 9–10. As a result, Plaintiff's regular security screenings at the airport took longer than his peers' and often included additional screenings after going through the standard metal detectors which led to verbal reprimands. *Id.* ¶¶ 12–16. Plaintiff was also criticized, in general, "for being slow when completing tasks," despite not taking longer than the allotted time per task on the proficiency exam. *Id.* ¶ 28.

According to Plaintiff, although he "improved significantly" over the course of his training and "received numerous positive comments," he was "often criticized for his techniques, despite the fact that the techniques [he] employed . . . were required by the manual established by [the airplane manufacturer] and UPS." *Id.* ¶¶ 17–18. Moreover, Plaintiff generally alleges he was given conflicting and inaccurate feedback on "multiple instances" and he "did not receive the same level of coaching and accurate feedback from training personnel that candidates under forty years of age received" or that "candidates without a disability received." *Id.* ¶¶ 30–32.

Plaintiff was terminated by UPS in November 2019. *Id.* ¶¶ 38–40. Mr. Wells, the only other pilot over forty, was also terminated. *Id.* ¶ 37. Plaintiff finally alleges a subsequent job offer from another employer was rescinded after UPS shared his training records, "which were not accurately representative of his performance and [were] negatively affected by the disparate treatment he received in training." *Id.* ¶¶ 41–42.

Plaintiff originally filed his Complaint in the Jefferson County Circuit Court in Jefferson County, Kentucky. [R. 1-2, p. 1]. Defendants removed the case to federal court under 28 U.S.C. §§ 1441 and 1446 on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of Utah and Defendants are citizens of Delaware, Georgia, and Ohio and the

amount in controversy exceeds $75,000.[3] *See* [R. 1, ¶¶ 8–18]. Defendants then filed their Motion to Dismiss, [R. 5], which is now fully briefed. *See* [R. 10]; [R. 13]. The matter stands ready for review.

## II.     LEGAL STANDARD

Rule 12 of the Federal Rules of Civil Procedure provides grounds upon which a defendant may move to dismiss a claim. Relevant here are Rules 12(b)(1) and 12(b)(6). *See* [R. 5, p. 1]. First, under Rule 12(b)(1), a defendant may move to dismiss a claim for lack of subject matter jurisdiction. Under Rule 12(b)(6), a party may move for dismissal for "failure to state a claim upon which relief may be granted."

A challenge under Rule 12(b)(1) is either a "facial attack" or a "factual attack." *Gentek Bldg. Prod., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007) (citations omitted). A facial attack "questions merely the sufficiency of the pleadings," while a factual attack "raises a factual controversy." *Id.* "A party raising a facial challenge argues that a complaint does not adequately plead [subject matter jurisdiction] even accepting its facts as true." *Ass'n of Am. Physicians & Surgeons v. U.S. Food & Drug Admin.*, 13 F.4th 531, 543 (6th Cir. 2021). Therefore, "[w]hen reviewing a facial attack, a district court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Gentek*, 491 F.3d at 300; *see also Ass'n Am. Physicians*, 13 F.4th at 543 (extending "*Twombly*'s plausibility test" to a 12(b)(1) motion and instructing courts to "[a]ccept[] as true the complaint's factual allegations (as opposed to its legal conclusions)" (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560–61

---

[3] Defendants also allege the Court has federal question jurisdiction under 28 U.S.C. § 1331 because, they argue, Plaintiff's state-law claims are preempted by a federal statute, the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* [R. 1, ¶¶ 21–22]. However, a preemption defense based on the RLA does not give a federal court jurisdiction over a state claim. *See Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 322–26 (6th Cir. 2005). Regardless, the Complaint sufficiently alleges diversity jurisdiction.

(2007))). "Where, on the other hand, there is a factual attack on the subject-matter jurisdiction alleged in the complaint, no presumptive truthfulness applies to the allegations" and "the district court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter [jurisdiction] does or does not exist." *Gentek*, 491 F.3d at 330 (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

"[A]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed.

R. Civ. P. 56." *Jackson*, 194 F.3d at 745 (internal quotations omitted); *see also Zakora v. Chrisman*, 44 F.4th 452, 464 (6th Cir. 2022) (stating the same). The only exceptions to this general rule are documents "attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and central to the plaintiff's claim," "public records, matters of which a court may take judicial notice, and letters of decisions of government agencies." *Jackson*, 194 F. 3d at 745.

## III. ANALYSIS

Defendants' Motion to Dismiss argues Plaintiff's case should be dismissed for two reasons: (1) Plaintiff's claims are preempted by the Railway Labor Act ("RLA") and (2) Plaintiff's claims are time-barred. *See* [R. 5-1, p. 6 (Memorandum in Support of Defendants' Motion to Dismiss)]. For the following reasons, the Court will deny the motion without prejudice.

### A. The Railway Labor Act

Defendants first contend the Court should grant their motion because "the claims asserted in the Complaint are preempted by the Railway Labor Act because they involve interpretations of" a collective bargaining agreement ("CBA") between the parties. [R. 5-1, p. 6]. The RLA, 45 U.S.C. § 151 *et seq.*, "governs and provides remedies for labor disputes in the airline industry." *Odell v. Kalitta Air, LLC* (*Odell II*), 107 F.4th 523, 527 (6th Cir. 2024). Labor disputes governed by the RLA are either "major," concerning the *formation* of collective bargaining agreements, or "minor," requiring *interpretation* of collective bargaining agreements. *Id.* (citing *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 785 (6th Cir. 2012)). Minor disputes must be resolved through "contractually agreed-upon grievance procedures" and, if that fails, then through mandatory and binding arbitration. *Emswiler*, 691 F.3d at 785 (citing 45 U.S.C. §§ 152–153). A district court can "reach the merits of [a pilot-plaintiff's] claims and grant relief only if it [does] not have to interpret the CBA in order to resolve the claims." *Odell II*, 107 F.4th at 529 (citing *Emswiler*, 691 F.3d at 792).

Based on the RLA, Defendants argue "the Complaint must be dismissed in favor of the mandatory grievance and arbitration processes outlined in the CBA." [R. 5-1, p. 6]. According to the defendants, "UPS and the Independent Pilots Association Union (the 'Union') are parties to a negotiated CBA that was made and entered into in accordance with the provisions of the Railway Labor Act," and "[a]t all relevant times, [Plaintiff] was a member of the Union." *Id.* at 2.[4] And, Defendants argue, Plaintiff's claims, "by necessity, will involve the interpretation of the CBA." *Id.* at 7. Because the claims require interpretation of the CBA, they argue, "his claims are preempted by the RLA and should be dismissed." *Id.* at 11.

Plaintiff, however, asserts that his claims are not preempted by the RLA because "there is no term in the [CBA] that has been brought into question," and his claims do not arise "from a dispute from a term in the [CBA]." [R. 10, p. 2]. He also briefly asserts that "the CBA does not apply to [him]" because "at the time of his termination, [he] was a probationary employee." *Id.* at 4. It is unclear from the Complaint whether Plaintiff ever moved beyond the training stage of his employment, though, in his response, Plaintiff refers to himself as a "probationary employee." *See id.* at 5.

Plaintiff also argues that Defendants concede the CBA does not apply to him in their motion when they state that "Farmer was a probationary employee and not protected by the just cause provisions of the contract." *Id.* at 4 (quoting [R. 5-1, p. 12]). However, at this stage, the Court does not interpret the Defendants' statement quite so broadly, as it is limited to "the just cause provisions" on its face. Without more information, the Court cannot say whether Plaintiff

---

[4] In making this assertion, however, Defendants rely on a declaration attached to their motion, [R. 5-2 (Smith Aff.)], and the CBA itself, [R. 52-2, Ex. 1]. As explained below, the Court cannot consider the CBA at this stage. *See infra* § III.A.2. Moreover, it cannot consider the Smith Declaration as it is a matter outside the pleadings inappropriate for the Court to consider when ruling on a motion to dismiss. *See Jackson*, 194 F.3d at 745.

[7]

was subject to the CBA. Regardless of his own membership in the Union or the applicability of the CBA to Plaintiff and his case, Plaintiff does not dispute that any CBA between Defendants and the Union would be subject to the RLA. *See generally id.*

Defendants' motion raises three primary issues involving the RLA: (1) whether this Court has subject matter jurisdiction over Plaintiff's claims; (2) whether the Court can consider the CBA at this stage of the litigation, and (3) if it can consider the CBA, whether the Court must interpret the CBA to resolve Plaintiff's claims. The Court will address each of these arguments in turn, beginning, as it must, with subject matter jurisdiction. For the following reasons, the Court will find that it has subject matter jurisdiction over the matter and that it cannot consider the CBA at this stage, and therefore will not address the merits of Defendants' RLA preemption argument.

        **1.**      **The Court's Jurisdiction**

Defendants make only a fleeting reference to Rule 12(b)(1), saying only that they are moving "pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)." [R. 5, p. 1]. In their memorandum in support of their motion, however, they do not mention Rule 12(b)(1) or subject matter jurisdiction. *See generally* [R. 5-1]. Twice, however, they state that this Court does not have jurisdiction over this dispute because the RLA's arbitration provisions preempt this Court's ability to hear the claim. *See id.* at 7 (asserting that "[c]laims that require interpretation or application of collective bargaining agreements between an employer and a union are 'minor disputes' over which *courts (both state and federal) lack jurisdiction*" (citation omitted) (emphasis added)); *id.* at 10 ("A discrimination claim is a minor dispute subject to the *arbitral body's exclusive jurisdiction* when a court is being asked to interpret a collective bargaining agreement in order to analyze an employer's action." (emphasis added)).

However, the RLA's arbitration provisions are not jurisdictional:

> [W]hile some courts analyze RLA preemption arguments under Fed. R. Civ. P. 12(b)(1) as implicating the court's subject matter jurisdiction to hear the claim, the Sixth Circuit has held that "completion of the RLA-mandated arbitral process does not affect a district court's subject matter jurisdiction over a claim but instead goes to the court's ability to reach the merits of a dispute and grant relief."

*Stanley v. ExpressJet Airlines, Inc.* (*Stanley II*), 356 F. Supp. 3d 667, 678 n.1 (E.D. Mich. 2018), *aff'd*, 808 F. App'x 351 (6th Cir. 2020) (quoting *Emswiler*, 691 F.3d at 790); *see also Upperman v. Sw. Airlines Co.*, No. 2:17-CV-00348, 2018 WL 527376, at *2–3 (S.D. Ohio Jan. 24, 2018) (denying the defendants' 12(b)(1) motion because "even if it were true that all of Plaintiff's claims were precluded or preempted by the RLA, . . . Plaintiff's failure to exhaust arbitration remedies under the RLA is of no relevance to the existence of subject-matter jurisdiction under Rule 12(b)(1)" (citing *Emswiler*, 691 F.3d at 789–90)).

Although Defendants only summarily address the issue of subject matter jurisdiction, the Court located one unpublished Sixth Circuit opinion and one unpublished district court opinion that treat RLA preemption as a subject matter jurisdiction issue. *See Yelder v. Norfolk S. Ry. Co.*, No. 21-1141, 2022 WL 18587845, at *2 (6th Cir. Aug. 12, 2022) ("[Defendant], on appeal, challenges the district court's conclusion that [Plaintiff's] race discrimination claims are not precluded by the RLA. Because this argument concerns the district court's subject-matter jurisdiction, we must assess it before reaching the merits." (first citing *Miller v. Norfolk & W. Ry. Co.*, 834 F.2d 556, 561 (6th Cir. 1987); then citing *Leu v. Norfolk & W. Ry. Co.*, 820 F.2d 825, 828 (7th Cir. 1987))); *Reynolds v. Kalitta Air, L.L.C.*, No. 21-10960, 2023 WL 6049507, at *2 (E.D. Mich. Sept. 15, 2023) (citing to *Yelder* to note that "[t]he Sixth Circuit is the lone circuit to [analyze RLA preemption as a nonjurisdictional issue] and has seemingly moved away from their *Emswiler* holding in recent years," but finding that the RLA did not preempt the plaintiff's claims "regardless of whether this issue is analyzed as a jurisdictional question or as a question of the court's ability to reach the merits."). In addition to containing little analysis of the jurisdictional

issue, *Yelder* and *Reynolds* are unpublished and therefore not binding authority on this Court. *See In re Blasingame*, 986 F.3d 633, 637 n.2 (6th Cir. 2021) ("Because [the cited case] is an unpublished decision of this Court, it is not binding authority."); *Schumacher v. State Auto. Mut. Ins. Co.*, 47 F. Supp. 3d 618, 632 (S.D. Ohio 2014) (declining to follow cases where "the analysis of [the relevant] issue at the district court and appellate levels [was] sparse . . . and the Sixth Circuit's decision [was] unpublished and therefore lack[ed] binding precedential value"). Moreover, the most recent published decisions on this issue do not recognize a departure from the *Emswiler* line of cases analyzing the issue as nonjurisdictional. *See Odell v. Kalitta Air, LLC* (*Odell I*), 678 F. Supp. 3d 904, 910 (E.D. Mich. June 20, 2023), *stay granted, motion to certify appeal granted*, 683 F. Supp. 3d 671 (E.D. Mich. 2023), and *aff'd*, *Odell II*, 107 F.4th 523 (stating the magistrate judge had converted the motion to dismiss for lack of subject matter jurisdiction based on RLA preemption to a motion for summary judgment "because it raised a nonjurisdictional issue and relied on materials outside the complaint"). As it contains a thorough analysis as to why RLA preemption is not a subject matter jurisdiction issue and is published, the Court will rely on *Emswiler*, 691 F.3d 782. As such, the Court has satisfied itself of jurisdiction and will consider the remainder of Defendants' arguments.

### 2. Consideration of the Collective Bargaining Agreement

The defendants allege "the resolution of [Plaintiff]'s claims, by necessity, will involve the interpretation of the CBA," and are therefore minor disputes subject to the RLA's arbitration provision. [R. 5-1, p. 7]. Plaintiff disagrees, arguing "this defense is unfounded because there is no term in the collective bargaining agreement that has been brought into question." [R. 10, p. 2]. The preliminary issue, however, is whether the Court can even consider the collective bargaining agreement at this stage of the litigation.

As previously explained, when considering a motion to dismiss, a court cannot normally consider matters outside of the pleadings. *Jackson*, 194 F.3d at 745. There are, however, a handful of exceptions to the general rule: documents "attached to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and central to the plaintiff's claim," "public records, matters of which a court may take judicial notice, and letters of decisions of government agencies." *Id.*; *Stanley v. ExpressJet Airlines, Inc.* (*Stanley I*), No. 16-CV-12884, 2017 WL 2462487, at *3 (E.D. Mich. June 7, 2017) (stating the same).

In a footnote, Defendants suggest the Court could take judicial notice of the CBA. *See* [R. 5-1, p. 5 n.3]. However, they rely only on out-of-circuit district court cases which are not binding on this Court. *See id.* Even if the Court were to consider these cases, they are unpersuasive and/or easily distinguishable. *See Bowman v. Jack Cooper Transp. Co. Inc.*, 399 F. Supp. 3d 447, 451 (D. Md. 2019) (taking judicial notice of a CBA but without finding that the document was a matter of public record and instead doing so after finding that the document was "essential to the suit" and the plaintiff did not challenge its authenticity); *Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1049–50 (N.D. Cal. 2005) (granting request to take judicial notice of the CBA without explanation); *Malobabich v. Norfolk S. Corp.*, No. 2:11-CV-112, 2011 WL 1791306, at *1 (W.D. Pa. May 10, 2011) (taking judicial notice of a CBA because it was considering subject matter jurisdiction which permits consideration of evidence beyond the pleadings). Moreover, a court in this jurisdiction has held that a "CBA is not a public record, a matter of which the Court can take judicial notice, or a letter decision of a government agency." *McDonald v. Kroger Co.*, No. 3:20-CV-120-CHB, 2020 WL 9351270, at *7 (W.D. Ky. Sept. 30, 2020). The Court will not take judicial notice of the CBA.

Defendants primarily argue that the first exception—permitting consideration of documents attached to a motion to dismiss and referenced in the complaint which are central to a plaintiff's claims—applies in this case and permits the Court to consider the CBA. *See* [R. 5-1, pp. 5–6]. First, they argue the CBA is incorporated by reference in the Complaint by pointing to the fact that Plaintiff mentioned the Union once in his Complaint. *See id.* at 5 (citing R. 1-2, ¶ 39). True, Plaintiff made passing reference to the Union when he mentioned receiving a phone call from "a staff attorney for the Independent Pilot's Association." [R. 1-2, ¶ 39]. At no point, however, does the Plaintiff's complaint discuss the CBA or his involvement with the Union. Nevertheless, Defendants direct the Court's attention to two cases in support of their position that this brief reference to a Union employee "implicitly incorporated the CBA by reference in [the] Complaint." *See* [R. 5-1, p. 5 (first citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz*, 534 U.S. 506; then citing *Cain v. Thompson*, No. 3:19-CV-00181, 2020 WL 42897, at *3 (W.D. Ky. Jan. 3, 2020))]. However, neither is persuasive.

First, in *Weiner*, the Sixth Circuit considered whether a district court, in granting a motion to dismiss, should have considered certain health plan documents, which had not been attached to the complaint. *Weiner*, 108 F.3d at 89. The *Weiner* plaintiff explicitly argued he was improperly denied payments in violation of the terms of a health benefits plan. *Id.* at 88. The Court held consideration of related "plan documents" was appropriate because the "[p]laintiff reference[d] the 'plan' several times in his complaint" and "his claims [were] based on rights under the plans which [were] controlled by the plans' provisions as described by the plan documents." *Id.* at 89. In the instant case, however, Plaintiff did not reference the CBA or explicitly assert rights provided to him under the CBA—he asserted rights under Kentucky employment discrimination law. *See* [R. 10, p. 4 (arguing his claims "arise under the Kentucky Civil Rights Act" and that "[t]he

[12]

collective bargaining agreement is not once mentioned or referred to in the Complaint.")]. His singular reference to an employee of the Union is markedly different than the *Weiner* plaintiff's referrals to the "plan" throughout his complaint. *Cf. Weiner*, 108 F.3d at 89.

The second case relied on by Defendants is similarly distinguishable. *See Cain*, 2020 WL 42897. In that case, the pro se plaintiffs brought an action based on a state foreclosure action but their "Complaint oddly [did] not explicitly 'refer to' the state action." *Id.* at *3; *see id.* at *1 (stating that "[t]he facts giving rise to [the] action [were] unclear on the face of the Complaint as filed by Plaintiffs," but the Defendant was an attorney who represented a bank in a state foreclosure action against the plaintiffs). The court considered the state action when deciding the defendant's motion to dismiss, finding that the "[p]laintiff's failure to properly plead their claims does not mean the Court must ignore the relevant facts" and that "[p]laintiffs cannot rely on their own vagueness . . . to avoid dismissal." *Id.* Importantly, however, the court based its holding on the fact that there was an "available public record of the underlying foreclosure action" and "a court may consider matters of public record in deciding a motion to dismiss without converting the motion into one for summary judgment." *Id.* (citations omitted). Defendants do not argue that the CBA is a public record, nor is the Court aware of any authority recognizing the same. *See Kovac v. Superior Dairy, Inc.*, 930 F. Supp. 2d 857, 863 (N.D. Ohio 2013) (refusing to consider a CBA between the defendant and its employees when ruling under Rule 12(b)(6) because it "[was] not public record and [was] not mentioned in [the plaintiff's] complaint"); *Stanley I*, 2017 WL 2462487, at *5 ("Defendant also suggests, with no citation to authority or analysis, that the CBA is within that category of 'public records' that the Court can consider on a motion to dismiss. The Court is not convinced." (citing *Kovac*, 930 F. Supp. 2d at 863)). Moreover, it is not clear from the face of the Complaint that Plaintiff bases his claims on the CBA.

[13]

Defendants also briefly argue that "even if [Plaintiff] had not referenced the Union in his Complaint, the CBA is still entwined with [his] Complaint because the Complaint relies upon the terms and effects provided in the CBA." [R. 5-1, p. 5]. They cite to a Second Circuit case holding that "[w]here a document is not incorporated by reference, the court may neverless [sic] consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)). Aside from being out-of-circuit, the *DiFolco* case is unavailing because, as explained, Plaintiff's claims under Kentucky discrimination law do not rely on the CBA, its terms, or its effects when looking at the face of the Complaint and construing it in the light most favorable to Plaintiff. Moreover, the *DiFolco* court also explained that, to consider a document under this standard, there must be no dispute about its authenticity or accuracy, and there must be no "material disputed issues of fact regarding the relevance of the document." *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

The *Stanley I* case is instructive. *Stanley I*, 2017 WL 2462487. The plaintiff in *Stanley* was a flight attendant who asserted claims under federal and state employment discrimination statutes. *Id.* at *1. Her employer filed a motion to dismiss under Rule 12(b)(6) or alternatively for summary judgment arguing that her claims were preempted by the RLA. *Id.* In ruling on the defendant's motion, the court had to decide whether to consider the collective bargaining agreement which governed the terms of the plaintiff's employment. *Id.* at *3–4. The *Stanley I* court acknowledged that

> [w]here the claims rely on the existence of a written agreement, and plaintiff fails to attach the written instrument, "the defendant may introduce the pertinent exhibit," which is then considered part of the pleadings. *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 721 (E.D. Mich. 2003). "Otherwise, a plaintiff with a legally deficient claim[] could survive a motion to dismiss simply by failing to attach a dispositive document." [*Weiner*, 108 F.3d at 89].

[14]

*Id.* at *3. Nonetheless, the court "decline[d] to consider the CBA at [the] pleading stage and thus decline[d] to reach the merits of Defendant's preemption argument." *Id.* at 4. The court noted that

> [t]he CBA was not attached to, mentioned in, or even indirectly referenced in Plaintiff's Complaint. Nor does it appear from the face of Plaintiff's Complaint that the CBA is central to Plaintiff's claims—rather it appears that the CBA is central to [the] defense. . . . Plaintiff disputed[d] the relevance of the CBA to her claims, which she assert[ed] [were] "based solely on independent federal and state statutory civil rights."

*Id.* at *5. There was no "'hook' to the CBA" in the plaintiff's complaint, the court found, unlike in a case where the plaintiff's complaint explicitly relied on the CBA. *Id.* (citing and distinguishing *Robinson v. V&S Detroit Galvanizing, LLC*, 195 F. Supp. 3d 916 (E.D. Mich. 2016)). Ultimately, the court denied the motion to dismiss because it could not rule on the preemption argument without considering the CBA and refused to alternatively consider the motion as one for summary judgment. *Id.*

Like the *Stanley I* court, the Court will decline—at this stage—to consider the CBA and thus will not consider the merits of Defendants' preemption argument. While the CBA may be central to Defendants' defense, it is does not appear, from the face of the Complaint, to be central to the plaintiff's claims such that the Court may consider it. *See id.*; *see also id.* ("While discovery may prove differently, nothing in Plaintiff's Complaint directly contradict[ed] this [argument by Plaintiff that her claims were not based on the CBA]."). The Court will thus deny Defendants' Motion to Dismiss as to their preemption argument.

Although Plaintiff argues that "Defendants' Motion to Dismiss should be converted to a Motion for Summary Judgment, and subsequently denied for being premature, as no discovery has taken place," the Court declines to convert the motion to one for summary judgment. [R. 10, p. 6]; *see also Lewis Lumber & Milling, Inc. v. Mereen-Johnson, LLC*, No. 3:17-CV-00643, 2018 WL 6181356, at *3 (M.D. Tenn. Nov. 27, 2018) (holding the Court could not consider a limited

[15]

warranty without converting the motion to dismiss into one for summary judgment, denying the motion to dismiss, and, "[i]n the absence of full discovery on the issue, . . . decl[ing] to convert the motion"); *id.* at *2 n.2 (first citing *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010); then citing *Graham v. Hopkinsville*, No. 5:12-CV-23, 2012 WL 4483866, at *2 (W.D. Ky. Sept. 28, 2012)) ("The Court has broad discretion to decide whether to consider matters outside the pleadings and convert the motion"). Importantly, however, the Defendants are "not precluded from reasserting [their] preemption argument in a motion for summary judgment following discovery and development of a more robust record." *See Stanley I*, 2017 WL 2462487, at *5. By not converting the motion now, the Court will be able to rule on any subsequent motions for summary judgment with the benefit of a more developed record and more precise arguments from the parties.

Should the Defendants file another motion concerning preemption, the Court encourages them to further develop their argument as to the alleged implication of the "seniority provision" alluded to in their motion. *See* [R. 5-1, p. 10 ("Not only do Farmer's allegations require the interpretation of the CBA, his demand for relief includes 'reinstate[ment] . . . in comparable employment,' which implicates Article 8 of the CBA, Seniority. . . . The reinstatement of Farmer would require a revision to UPS' seniority list and that cannot occur without interpretation of the CBA and the involvement of the Union.")]. It is not clear through the briefing why such relief would require interpretation of the seniority provision, and Plaintiff argues no such interpretation is necessary. *See* [R. 10, pp. 4–5]. Any subsequent motions regarding preemption and the CBA should also address Plaintiff's argument that he was not subject to the CBA as a probationary employee. *See id.*

[16]

### B. Statute of Limitations

In a single paragraph in their motion, Defendants also seek dismissal of Plaintiff's claims on statute of limitations grounds. [R. 5-1, p. 12]. Defendants assert that the applicable statute of limitations is Ky. Rev. Stat. § 413.115(2), which states that claims arising under Ky. Rev. Stat. § 344.030 to § 344.110 must be brought within three years after the cause of action accrued. [R. 5-1, p. 12 (citing Ky. Rev. Stat. § 413.115)]. This three-year statute of limitations became effective on July 15, 2024. Ky. Rev. Stat. § 413.115. Plaintiff alleges he was terminated on November 15, 2019, so Defendants argue if the three-year statute of limitations under § 413.115 applies, Plaintiff's claims are time-barred because they were not filed until mid-July 2024. *See* [R. 5-1, p. 12]. Plaintiff, however, argues that the former five-year statute of limitations applies. [R. 10, p. 6]; *see also* § 413.120(2) (setting a five-year statute of limitations for "action[s] upon a liability created by statute, *when no other time is fixed by the statute creating the liability*" (emphasis added)).[5]

Plaintiff, like Defendants, devotes only a single paragraph to his timeliness argument. [R. 10, p. 6]. From the best the Court can tell, he argues that he filed his complaint before the new statute of limitations took effect. *See id.* According to Plaintiff, he hand-delivered his complaint to the clerk on July 14, 2024. *Id.* Apparently, at the time, the on-duty clerk refused payment due to "construction and renovation" and the electronic filing system was unable to accept payment and the filing. *Id.* To his Response, Plaintiff attached a scan of the first page of the Complaint with an ink stamp containing the text "JEFFERSON CIRCUIT CT 2024 JUL 14." [R. 10-1]. Plaintiff posits the "Complaint was additionally filed electronically on July 15th, Prior to the new statute

---

[5] Plaintiff does not identify what statute of limitations he relies on, but the Court understands that he refers to § 413.120. *See, e.g.*, *Walker v. Commonwealth*, 503 S.W.3d 165, 172 (Ky. Ct. App. 2016) (applying § 413.120 to actions under the Kentucky Civil Rights Act).

[17]

of limitations taking effect, the prior law held that the statute of limitations for claims under [Ky. Rev. Stat. §] 344 was 5 years." [R. 10, p. 6 (citing [R. 10-2 (electronic filing confirmation email)].

Defendants, however, allege the Complaint was filed on July 16, 2024. [R. 5-1, p. 12]. The Complaint itself contains a footer stating, "filed 24-CI-004946 7/16/2024 David L. Nicholson, Jefferson Circuit Clerk." [R. 1-2]. Defendants also attached a copy of the Jefferson Circuit Court's docket, showing the Complaint was filed on July 16, 2024. [R. 13-1, p. 3]. Moreover, the new statute, Defendants contend, applies "[e]ven if, as Plaintiff argues in his Response, he electronically filed his complaint on July 15, 2024," because "the new statute of limitations became effective that very day." [R. 13, p. 6]. Finally, Defendants argue that Plaintiff's hand-delivery of the Complaint on July 14 did not legally commence the action because such actions must be electronically filed. *Id.* at 6–7 (citing Supreme Court of Kentucky Order 2023-11 which requires "all eligible documents, including document(s) initiating the action," to be "electronically filed in the following case types in circuit and district courts," including "Employment Discrimination"). The Court also notes that, in Kentucky, an action is considered commenced upon "the date of the first summons or process issued," Ky. Rev. Stat. § 413.250, which, according to the state-court docket, took place on July 16, 2024. *See* [R. 13-1, p. 3].

Once again, the Court must evaluate what it can consider in deciding this Motion to Dismiss. In addition to the Complaint in the record, [R. 1-2], the Court can consider the Jefferson Circuit Court docket as a matter of public record. *See, e.g.*, *McDonald v. Kroger Co.*, No. 3:20-CV-120-CHB, 2020 WL 9351270, at *7 (W.D. Ky. Sept. 30, 2020) ("Among the things a district court may take judicial notice of are other court proceedings."); *Gorneleh v. City of Kettering*, No. 3:17-CV-181, 2017 WL 4517586, at *1 n.3 (S.D. Ohio Oct. 10, 2017), *report and recommendation adopted*, 2017 WL 4862794 (S.D. Ohio Oct. 26, 2017) ("In deciding the pending motions,

[including several motions to dismiss] the undersigned did consider the public docket of the [state] Municipal Court because, in addition to well-pleaded allegations in the complaint, a Court may also consider matters of public record, orders, [and] items appearing in the record of the case when deciding a Rule 12 motion." (cleaned up)). The plaintiff cites no authority, nor is the Court aware of any, that would permit the Court to consider a copy of the Complaint outside the one filed with the Court in the case record, [R. 10-1], or his attorneys' emails, [R. 10-2].

Moreover, Plaintiff's briefing on this point leaves the Court with lingering questions as to the exact contours of his argument: namely, whether he is arguing that the five-year statute of limitations applies regardless of when the document was filed, that the new statute applies only for actions filed *after* (but not including) July 15, 2024, or whether he is just informing the Court when the Complaint was entered electronically after he manually filed it. Generally, the arguments raise, but do not answer, the questions of when exactly his claim was initiated and, if it was initiated after the new statute of limitations took effect, whether that statute of limitations applies to the action. Whatever his position, he provides no authority in support. Defendants similarly provide no support for the proposition that the effective date § 413.115 applies to actions *filed* on or after that date rather than actions *accruing* on or after that date. *See* [R. 13, p. 6]. As noted, however, Plaintiff does not expressly refute that proposition nor provide contrary authority. Indeed, the parties only briefly address their timeliness arguments, and neither cite to any case law or other authority beyond the statutes of limitation.

In any case, "a motion to dismiss is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Lindsey v. Collier*, 606 F. Supp. 3d 769, 773 (M.D. Tenn. 2022) (cleaned up). This is especially the case when, as here, it is not apparent on the face of the Complaint that the claims are time-barred. *See id.* In this case, moreover, it would be

[19]

premature to rule on the statute of limitations issue given the new statute of limitations, § 413.115, and the dearth of authority provided by the parties. As such, and given the parties' undeveloped arguments on this issue, the Court will deny the Defendants' motion to dismiss on statute of limitations grounds without prejudice.

## IV. CONCLUSION

Accordingly, the Court will deny Defendants' Motion to Dismiss, [R. 5], without prejudice. If further motions are filed on the issues of preemption and the applicable statute of limitations, the parties are advised to address the issues highlighted by the Court above to further clarify and refine their arguments. Therefore, for the foregoing reasons, and with the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED**

1. Defendants' Motion to Dismiss, [**R. 5**], is **DENIED without prejudice.**

2. Plaintiff **SHALL** file a status report advising the Court as to whether he is pursuing claims against UPS Inc. within **fourteen (14) days** of the entry of this order.

This the 22nd day of January 2025.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY