**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.  3:24-CV-00460-CHB-CHL**

**JASON FARMER,**                                                                    **Plaintiff,**

**v.**

**UNITED PARCEL SERVICE CO., et al.,**                                     **Defendants.**

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Motion to Compel and for Additional Relief (DN 34) and the Motion to Supplement filed by Defendant United Parcel Service Co. ("Defendant").  (DN 37.) Plaintiff Jason Farmer ("Plaintiff") has filed a Response to both.  (DNs 35, 39.)  Defendant has filed a Reply in support of both.  (DNs 36, 41.)  Therefore, both Motions are ripe for review.

### I.      Background

Plaintiff was hired as a pilot by Defendant.  (DN 1-2, at ¶¶ 7-8.)  Plaintiff was also born with a congenital defect in his hips requiring surgery to replace them with titanium.  (*Id.* at ¶¶ 9-12.)  Because of these hip replacements, Plaintiff took additional time to go through security checks at his job, leading to him being verbally reprimanded for being slow and holding up the flight crew.  (*Id.* at ¶¶ 12-15.)  Plaintiff was also repeatedly criticized during his flight training. (*Id.* at ¶¶ 18-29.)  After a series of training sessions wherein Plaintiff received negative feedback, he was fired.  (*Id.* at ¶¶ 39-40.)  Plaintiff is now suing Defendant for age and disability discrimination.  (*Id.* at ¶¶ 43-57.)

The Parties had a deadline to serve initial disclosures by May 2, 2025.  (DN 28, at PageID # 672.)  By November 11, 2025, the date of Defendant's Status Report (DN 29), Plaintiff had still not served his.  (*Id.* at PageID # 677.)  But Plaintiff's failure to participate in discovery did not end

there.  Defendant's counsel served discovery requests on August 18, 2025.  (*Id.* at PageID # 678.)

More than a month later, Plaintiff asked Defendant for an extension of time to respond to discovery

through October 6, 2026.  (*Id.*)  Defendant agreed but still received no response by that deadline.

(*Id.*)   On October 22, 2025, Defendant asked Plaintiff for information regarding the overdue

responses.  (*Id.*)  It was not until November 10, 2025, that Plaintiff finally responded.  (*Id.*)

Plaintiff asked Defendant to meet on November 13, 2025, to confer on discovery, a date that was

after the deadline to file the Joint Status Report.  (*Id.* at PageID # 679.)

The Court conducted a status conference to discuss the lack of progress in discovery.  (DN

33.)   Counsel for Plaintiff asserted that Plaintiff's medical condition prevented him from

participating fully in discovery.  (*Id.*)  The Court expressed skepticism that Plaintiff's condition

could prevent Plaintiff's counsel from serving initial disclosures and admonished counsel that such

conduct was unacceptable.  (*Id.*)  The Court then gave Plaintiff until December 18, 2025, to serve

complete responses to Defendant's discovery requests.  (*Id.* at PageID # 685.)  The Court further

cautioned Plaintiff's counsel that if he continued to shirk his responsibility to participate in

discovery, the Court would set an in-person status conference to discuss such failure, and order

both client representatives and counsel to attend.  (*Id.*)  The Court also warned counsel that failure

to prosecute this matter could result in dismissal of this case.  (*Id.*)

On December 18, 2026, Plaintiff served his initial disclosures as well as his responses to

Defendant's requests.  (DN 34-1, at PageID # 692.)  But Plaintiff's discovery responses were

deficient.

### A.      Interrogatories

Defendant served Plaintiff with interrogatory 6, which reads as follows:

Provide the actual amount of damages that you contend constitute your total
damages arising from this action, including, with specificity, each item of damage,

2

the amount of damage you attribute to each item, the means and/or method each such item was calculated, and the documents which relate to each calculation.

(DN 34-4, at PageID # 717.)  In response, Plaintiff stated the following:

> 1-Quit a high paying private jet management/maintenance/pilot contract to accept employment at UPS.  Because of the illegal termination Plaintiff is only a 1099 employee working odd flying jobs when possible.  Plaintiff is seeking his salary, salary increases, any possible bonuses, monetary value of all UPS benefits, and damages from UPS for the illegal treatment.  Plaintiff will have access to the amount once discovery has been completed.  [Plaintiff] anticipates the number to be close to $300,000.00 per year for 25 years or mandatory retirement age.
> 2-Interviewed and was hired in pilot pool at ATI Air Transport International Cargo Airlines in January 2020.  Offer rescinded July 31, 2020.  Pilot Payscale.  Topic of interview was what happened at UPS?  See attachment number one.
> 3-Interviewed and was turned down American Airlines July 2023.  Best friend interviewed and was hired two months prior to me.  Upgraded in 2.5 years to B737 Captain.  Topic of two interviewers was what happened at UPS?  See attachment number two.
> 4-Interviewed and was turned down by Hawaiian Airlines in April 27, 2023.  Topic of Chief Pilot and Assistant Chief Pilot Interview Panel.  What happened at UPS? That is a highly sought after dream job.  See attachment number three.
> 5-Interviewed and was turned down for Airbus 220 Street Captain at Breeze Airways on May 17, 2023.  Topic of interview, what happened at UPS?  Hiring board denial letter May 19, 2023.  See attachment number four.
> 6-Multiple Part 91 and Part 135 flying jobs including Guardian Medical in San Antonio and Intermountain Health Life-Flight Salt Lake City Utah, and Classic Air Medical, Woods Cross, Utah.  Topic of UPS termination heavily discussed by all Chief Pilots and Director of Operations.

(*Id.*, at PageID # 717-18.)  Plaintiff's response did not contain a computation of each item of damages as requested.  Defendant also served interrogatory 7, which stated as follows:

> Identify each physician, psychologist, or other health care provider with whom you consulted or from which you have obtained treatment of any kind in the past ten (10) years.  Identify the name, address, and telephone number of each physician or health care professional or provider consulted; the date(s) on which each person was consulted; the diagnosis rendered; the nature of the treatment, if any, and the dates thereof; and, the results of such treatment, including prognosis rendered.  For each such health care professional, please execute an Authorization for Release of Information and Authorization for Release of Psychotherapy Records/Notes in the forms attached hereto as Exhibits 1 and 2, respectively.

(DN 34-4, at PageID # 718.)  Instead of signing the authorizations, Plaintiff only listed the names and addresses of thirty medical facilities in various states.  (*Id.* at PageID # 718-24.)  And some of

the facilities listed were not accompanied by the name of the healthcare provider who treated Plaintiff, and none of them included the dates on which Plaintiff was treated. (*Id.*) On February 5, 2026, Plaintiff *finally* served fully executed medical authorizations and an updated list of medical providers. (DN 36-4, at PageID # 794.) But this late production made it difficult for Defendant to obtain records from Plaintiff's healthcare providers. (DN 41, at PageID # 1011.)

## B.       Requests for Production

In response to Defendant's requests for production, Plaintiff provided only fifteen unlabeled and unnumbered pages of documents by the deadline set by the Court. (DN 36, at PageID # 779.) Below the first request for production, Plaintiff simply wrote "[r]esponses to all [d]ocument [r]equests are attached." (DN 34-4, at PageID # 731-32.) In response to none of these requests did Plaintiff ever indicate which of the produced documents were responsive to each request. (*Id.*)

On December 29, 2025, Plaintiff served supplemental discovery responses, but those documents were password protected.[1] (DN 36, at PageID # 779.) It was not until January 14, 2026, after Defendant filed its Motion, that Plaintiff provided the necessary password. (DN 36-1, at PageID # 788.) On January 28, 2026, Plaintiff provided Defendant with a link to eighty-five documents, and other than the few materials provided on December 18th and December 29th, the vast majority of these materials were produced for the first time. (DN 36, at PageID # 779.)

Defendant took Plaintiff's deposition on March 3, 2026, and learned that Plaintiff had *still* not provided all responsive materials in his possession. (DN 37-1, at PageID # 801.) Counsel for

---

[1] Rule 26(e) requires a party to supplement a prior production if that party learns in some material respect that its response was incomplete or incorrect. Fed. R. Civ. P. 26(e)(1)(A). It is not a method by which a party may circumvent a deadline to respond by producing a portion of documents and supplementing with the rest later, especially if that party knew it had all responsive documents.

4

Defendant then asked Plaintiff for those materials. (*Id.*) It was not until March 31, 2026, that Plaintiff finally produced the requested materials. (DN 37-2, at PageID # 802.)

## II.   Discussion

Defendant is asking the Court to order Plaintiff to label/number the documents he produced and identify the discovery requests to which each document was responsive. (DN 41, at PageID # 1012.) Defendant is also asking that the Court permit Defendant to continue its efforts to collect Plaintiff's medical and employment records and to compel Plaintiff to serve supplemental answers and responses to Defendant's discovery requests, including his tax returns from 2019 through the present. (*Id.* at PageID # 1013.) Defendant also requests that the Court prohibit Plaintiff from offering evidence related to his disability and his alleged damages. (*Id.*) Defendant asks that the Court dismiss Plaintiff's claims due to his failure to cooperate in discovery. (*Id.* at PageID # 1012 n. 3.) Finally, Defendant requests that the Court order Plaintiff to provide a complete computation of his damages. *See* (DN 36, at PageID # 783-84.)

### A.   Computation of Damages

Interrogatory 6 requests information similar to that required by Rule 26(a)(1)(A)(iii). Under Rule 26(a)(1)(A)(iii), a party must disclose:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii). In Plaintiff's initial disclosures, he stated:

> Currently, Plaintiff has lost his income and is working as a 1099 employee as a pilot. Plaintiff asserts that he is entitled to seek Front Pay, Back Pay and Consequential damages and any other damages allowed by law including reasonable attorneys' fees and costs pursuant to any applicable rule, statute, or order. Further, Plaintiff reserves the right to seek appropriate damages, if appropriate or applicable.

(DN 34-3, at PageID # 707.)  Like Plaintiff's response to interrogatory 6, the Court finds this disclosure to be inadequate.  Although Plaintiff includes some information as to his requested damages, he fails to include a computation of each item of damages.  Plaintiff insists that he does not have access to sufficient information to answer interrogatory 6—or to make his initial disclosures—because he "does not precisely know the salary or wages of a UPS pilot that was hired on or around the same time as the Plaintiff."  (DN 35, at PageID # 766.)  The Court is not convinced.  Plaintiff was hired as a UPS pilot (DN 1-2, at ¶ 7), and presumably, was paid a salary or a wage as a pilot for Defendant.  And if Plaintiff expects damages based on any predicted salary increases, then Plaintiff should have some basis for claiming such damages.

Moreover, Plaintiff anticipates his damages to be "close to $300,000.00 per year for 25 years or mandatory retirement age."  (DN 35, at PageID # 766.)  If Plaintiff does not have access to sufficient information, then it does not make sense that Plaintiff could compute *some* form of damages.  Plaintiff has offered some estimation of damages; Plaintiff should therefore have a computation for those damages.  In any event, discovery in this matter has been ongoing long enough that Plaintiff should have all the requisite information by now.  For this reason, the Court finds this response and Plaintiff's initial disclosures to be insufficient.  Therefore, the Court will order Plaintiff to revise his response to interrogatory 6 and his initial disclosures to provide a complete computation of his damages by category with each category itemized.

### B.      Requests for Production

Defendant requests that Plaintiff be required to label/number the documents he has produced and to identify the requests to which each document is responsive.  (DN 41, at PageID # 1012.)  Under the Federal Rules of Civil Procedure, a party must produce documents as they are kept in the usual course of business or organize and label them to correspond to the categories in

6

the request.  Fed. R. Civ. P. 34(b)(2)(E)(i).  Courts have held that this applies not only to paper documents but to ESI as well.  *E.g., Quality Mfg. Sys., Inc. v. R/X Automation Sols., Inc.*, No. 3:13-CV-00260, 2016 WL 1244697, at *6 (M.D. Tenn. Mar. 30, 2016).  This rule prevents parties from producing documents in an unorganized dump while commingling key documents with unrelated material.  Such a discovery tactic is unresponsive and improper under the Federal Rules.  *See Stooksbury v. Ross*, 528 F. App'x 547, 553 (6th Cir. 2013).  The Court will therefore order Plaintiff to revise his responses to Defendant's requests for production to indicate which documents are responsive to each discovery request.

Defendant asks that Plaintiff be compelled to serve supplemental answers and responses to Defendant's discovery requests, including production of his tax returns from 2019 through the present.  (DN 41, at PageID # 1013.)  Plaintiff states that he has already produced "tax records."  (DN 39, at PageID # 985-86.)  But Defendant responds that the tax records Plaintiff provided were not actual tax returns as Defendant requested.  (DN 41, at PageID # 1011.)  But those records are not before the Court, so the Court cannot determine whether Plaintiff has provided responsive documents.  As such, the Court will order Plaintiff to serve his tax returns if he has not already.

### C.    Sanctions

If a party fails to obey a discovery order, then the Court may issue any further just orders.  Fed. R. Civ. P. 37(b)(2)(A).  Such orders may include prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.  *Id.* 37(b)(2)(A)(ii).  They may also include dismissing the action or proceeding in whole or in part.  *Id.* 37(b)(2)(A)(v).  Instead of, or in addition to, such orders, the court *must* order the disobedient party to pay the reasonable expenses caused by the failure.  *Id.* 37(b)(2)(C).

A party that fails to provide information or identify a witness as required by Rule 26(a) or (e) is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless. *Id.* 37(c)(1). In addition to or instead of such a sanction, the Court *may* order payment of reasonable expenses caused by the party's failure, inform the jury of the party's failure, and impose any other appropriate sanction, including those listed in Rule 37(b)(2)(A)(i) to (vi). *Id.*

### 1.    Violation of a Court Order

Rule 37(b) does not apply to general discovery misconduct; it applies only when a party has failed to comply with a court order. Fed. R. Civ. P. 37(b). Thus, unless Plaintiff has violated a specific court order, the Court may not issue any sanctions under this Rule. *See Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013). A district court's decision to impose sanctions under Rule 37(b) is reviewed for abuse of discretion. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976).

Here, Plaintiff has violated the Court's December 10, 2025, Order. The Court has discussed Plaintiff's failure to provide a complete response to interrogatory 6, but Plaintiff's failure to comply with the Court's Order extends to his other responses. Although Plaintiff provided *some* discovery responses to Defendant, they were not complete. Plaintiff served fifteen accessible pages of documents and served password-protected documents that were late. And the password for those documents was not provided until after Defendant filed his Motion. But even after Plaintiff provided the password for those documents, Defendant discovered, during Plaintiff's deposition, that Plaintiff had still not produced everything.

As for the interrogatories, Plaintiff produced a list of medical facilities, omitting the names of the medical providers for most of them, as well as the dates that Plaintiff received treatment.

To answer for this deficiency, Plaintiff stated he did not have the specific information necessary to identify the medical providers, but that he was "currently obtaining that information." (DN 35, at PageID # 767.)  Although Plaintiff eventually cured this deficiency, it is unacceptable that he waited until Defendant filed its Motion before gathering information he should have had already.

Furthermore, when Plaintiff eventually signed the medical authorizations, he did not address them to specific medical providers, rendering them useless. (DN 36-3, at PageID # 792.) But Plaintiff stated this was intentional so as to "allow Defendant the ability to request information from any necessary party." (DN 35, at PageID # 767.)  Although Plaintiff eventually produced completed medical authorizations, his failure to do so by the deadline delayed this matter. (DN 36, at PageID # 782.)

But just because a party violates a discovery order does not necessarily mean that party must be sanctioned.  The Sixth Circuit Court of Appeals considers four factors when reviewing a district court's decision to impose sanctions under Rule 37. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997) (citing *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 154-55 (6th Cir. 1988)).  These "*Regional Refuse*" factors are: (i) whether the party's failure to comply with a discovery order is due to willfulness, bad faith, or fault; (ii) whether the adversary was prejudiced by the party's failure to comply with a discovery order; (iii) whether the noncompliant party was warned that failure to comply could lead to the sanction; and (iv) in the case of dismissal, whether less drastic sanctions were first imposed or considered before the court dismissed the case. *Id.*

Defendant is asking the Court to dismiss Plaintiff's claims for disobeying the Court's order, and in the alternative, prohibit Plaintiff from offering evidence related to his alleged disability and alleged damages. (DN 41, at PageID # 1012-13.)  While the former is an explicit request for

9

dismissal, the latter would be tantamount to dismissal.  Therefore, either form of relief would require that the *Regional Refuse* factors be met.  *Cf. Freeland*, 103 F.3d at 1276 ("Although the sanction imposed by the district court for plaintiffs' alleged discovery violations was the preclusion of plaintiffs' expert witness testimony at trial, this sanction, in effect, resulted in the dismissal of plaintiffs' medical malpractice case, because without expert testimony, plaintiffs had no claim to present.  Therefore, we will review the district court's actions pursuant to Fed. R. Civ. P. 37 as a sanction for discovery violations that resulted in dismissal of plaintiffs' case with prejudice.").

### a) Bad faith, Willfulness, or Fault

Under the *Regional Refuse* test, the Court must first consider whether the party's failure to cooperate in discovery was due to willfulness, bad faith, or fault before it may impose sanctions under Rule 37.  *Freeland*, 103 F.3d at 1277 (citing *Reg'l Refuse*, 842 F.2d at 154-55).  If the Court only assessed monetary sanctions on Plaintiff, then this factor would be satisfied by a showing that Plaintiff's conduct did not raise an issue about which reasonable people could differ.  *See Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 766 (6th Cir. 2005).  But because Defendant is asking the Court to exclude crucial evidence from this matter, the Court would need to find that Plaintiff's conduct amounted to "a clear record of delay or contumacious conduct." *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980).  Otherwise, dismissal is an abuse of discretion, and the Court is limited to lesser sanctions to achieve compliance.  *Id.*

### (1) Plaintiff's conduct does not raise an issue about which reasonable people can differ.

The Court set a deadline for Plaintiff to produce complete responses, and he did not. Plaintiff's responses to the points raised by Defendant do not persuade the Court that his conduct raises an issue about which reasonable people can differ.  To begin, Plaintiff's counsel claims that he "is at a loss" to understand Defendant's claim that only fifteen pages of accessible documents

10

were produced.  (DN 35, at PageID # 767.)  To explain this position, Plaintiff stated that Defendant's counsel acknowledged receipt of the documents and information on December 29, 2026.  (*Id.*)  But this does not persuade the Court that a genuine dispute exists.  First, the deadline to produce those documents was December 18th, not December 29th.  (DN 33.)  Second, the Court cannot credit Plaintiff's confusion given that Defendant's counsel himself told Plaintiff's counsel that those documents were password protected on January 7, 2026.  (DN 34-7.)

Additionally, Plaintiff states that he intentionally left the medical releases blank so that Defendant can use them to request information from any necessary party.  (DN 35, at PageID # 767.)  Not only is this an outright admission that Plaintiff intended to violate the Court's Order, but Plaintiff's reasoning also does not make sense.  The releases did not contain the names of the specific providers with whom Plaintiff treated, and Defendant did not have the information to determine who those providers were.  (DN 36-3, at PageID # 792.)  Moreover, with respect to Plaintiff's password-protected documents, he states that he listed the password in the names of two of the files but did not specifically state that that password was the same for all files.  (DN 35, at PageID # 764.)  But if Plaintiff did not so state, then Defendant cannot be expected to know that. Finally, with respect to the documents produced after Defendant's deposition, Plaintiff states he was out of the country repairing his own airplane.  (DN 39 at ¶ 8.)  But this does not explain why Plaintiff failed to produce these documents before his deposition.  Accordingly, the Court finds the first factor has been met with respect to Defendant's request for fees.

### (2) Plaintiff's actions demonstrate a clear record of contumacious conduct.

A district court abuses its discretion in dismissing an action, with prejudice, without a "clear record of delay or contumacious conduct." *Freeland*, 103 F.3d at 1277.  Contumacious conduct is behavior that is "perverse in resisting authority and stubbornly disobedient." *Carpenter*

*v. City of Flint*, 723 F.3d 700, 704-05 (6th Cir. 2013) (citing *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Webster's Third New International Dictionary* 497 (1986))).  The party's conduct must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of his conduct on those proceedings.  *Id.* at 705 (citing *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001))).

In *Harmon v. CSX Transportation, Inc.*, 110 F.3d 364 (6th Cir. 1997), the court held that the plaintiff's disregard for the defendant's persistent discovery requests in addition to his contempt for an order from the district court justified the district court's decision to dismiss the plaintiff's claim.  *Id.* at 368.  The plaintiff failed to respond to the defendant's requests for discovery several times throughout litigation.  *Id.* at 365.  The plaintiff had also failed to respond to the defendant's counsel's letter stating that the defendant intended to file a motion to compel unless counsel received a response from the plaintiff.  *Id.*  When the defendant filed its motion to compel, the plaintiff failed to respond.  *Id.* at 366.  The district court then ordered the plaintiff to comply with the discovery at issue.  *Id.*  The plaintiff did not comply.  *Id.*  Then, the defendant filed a motion to dismiss.  *Id.*  The plaintiff requested an extension of the deadline to respond, and the district court granted his request.  *Id.*  Nevertheless, the plaintiff failed to respond by the new deadline.  *Id.*  The district court then dismissed the case.  *Id.*  The Sixth Circuit held that the district court did not abuse its discretion in dismissing the case because the record was "more than adequate to establish that Harmon's counsel was stubbornly disobedient and willfully contemptuous."  *Id.* at 368.

But in *Carpenter*, the court held that the plaintiff's actions constituted mere dilatory conduct not deserving of dismissal, and thus the district court abused its discretion in dismissing

12

the case.  723 F.3d at 705.  The court noted that the plaintiff and his counsel did not fail to appear at scheduled pretrial conferences, nor did they fail to respond to discovery requests, nor had they acted in contempt of a court order compelling cooperation of such requests.  *Id.*  Even though the plaintiff failed to comply with local rules concerning the format of papers filed in the record, failed to timely respond to the defendants' motion to strike, and failed to move the litigation forward, the court found that such actions did not demonstrate "a clear record of contumacious conduct warranting dismissal with prejudice."  *Id.*  Accordingly, dismissal was an abuse of discretion.  *Id.* at 704.

In *D&R Services, LLC v. Mesa Underwriters Specialty Insurance Co.*, No. 23-5651, 2024 WL 2830660 (6th Cir. June 4, 2024), the court found that the plaintiffs' repeated failures to comply with discovery coupled with counsel's failure to account for the plaintiffs' noncompliance "evidenced fault and an intent to disobey a court order," sufficient to constitute contumacious conduct.  *Id.* at *4.  The plaintiffs failed to answer interrogatories, failed to respond to a motion to compel, and failed to comply with the magistrate judge's order to compel.  *Id.*  Moreover, the plaintiffs knew that the defendant requested dismissal with prejudice based on the plaintiffs' non-compliance and yet did not notify the district court that it intended to comply with the discovery order or that it was unable to do so.  *Id.*  Instead, the plaintiffs' counsel moved for voluntary dismissal so that it could refile the suit when it was more convenient to do so.  *Id.*  Considering the plaintiffs' apparent intention to refile the suit at a more convenient time, along with counsel's failure to account for the plaintiffs' continued noncompliance, the court held that the district court did not abuse its discretion in dismissing the complaint.  *Id.*

Here, Plaintiff's conduct reflects a pattern of contumacious conduct.  Although the Scheduling Order required the Parties to serve initial disclosures by March 21, 2025, Plaintiff

13

failed to serve them by the deadline. (DN 29.) In August of 2025, Defendant served its written discovery requests on Plaintiff, along with a notice to take Plaintiff's deposition for November 5, 2025. (*Id.*) On September 25, 2025, four days after his responses were due, Plaintiff's counsel asked for an extension of time through October 6, 2025, to provide responses. (*Id.*) While Defendant agreed to this extension, Plaintiff's counsel failed to serve his responses and failed to communicate with Defendant. (*Id.*) On October 22, Defendant's counsel emailed Plaintiff's counsel a request for information as to those overdue responses. Again, Plaintiff's counsel did not respond. (*Id.*) On November 4, Defendant's counsel sent Plaintiff a letter, outlining the lack of progress in the case and again requesting a call to discuss. (*Id.*) Defendant's counsel also warned Plaintiff's counsel that it would notify the Court if it needed assistance to compel the responses. (*Id.*) Plaintiff's counsel finally responded, stating that he was working on gathering information from Plaintiff. (*Id.*) By mid-November, two and a half months before discovery was set to close, Plaintiff's counsel had still not sent his initial disclosures, responded to Defendant's discovery requests, coordinated Plaintiff's deposition, or even conferred with Defendant to discuss the matter. (*Id.*) Plaintiff's counsel represented that his client's medical condition had prevented participation in discovery but the Court expressed skepticism that Plaintiff's condition would have prevented counsel from complying with his discovery obligations.[2] (DN 33, at PageID # 685.) The Court further admonished counsel that regardless of the circumstances, his conduct was not acceptable. (*Id.*) The Court then gave Plaintiff two weeks to provide complete responses to the

---

[2] Later developments in this case have provided the Court with even greater cause to doubt this explanation. First, Plaintiff's willingness to cooperate in discovery seems to coincide with the threat of consequences. Plaintiff provided discovery responses after the Court warned Plaintiff that failure to cooperate could lead to sanctions. Plaintiff also provided Defendant with the password to access documents after Defendant filed its Motion. Second, Plaintiff himself told Defendant's counsel that he could easily obtain the list of dates and treatment for his medical providers. (DN 37-1.)

14

discovery served by Defendant.  (*Id.*)  But Plaintiff again failed to comply, forcing Defendant to file its Motion.

Plaintiff argues that Sixth Circuit authority "makes clear that attorney's fees are not appropriate for minor, harmless discovery omissions absent bad faith or prejudice," while citing to no Sixth Circuit authority.  (DN 35, at PageID # 768.)  One of these mistakes might constitute a minor, harmless omission in isolation.  But collectively, these mistakes demonstrate a concerning pattern from Plaintiff.  They reflect a lack of diligence and an unwillingness to communicate with Defendant to progress through discovery without delay.  But more importantly, they reflect a reckless disregard for the delay caused by Plaintiff.  This is precisely the type of conduct that the Sixth Circuit considers to be contumacious.  *Carpenter*, 723 F.3d at 705.

### b)       Prejudice to Defendant

A party is prejudiced by the conduct of another party if the prejudiced party is required to waste time, money, and effort to secure the cooperation that the other party was legally obligated to provide.  *See Harmon*, 110 F.3d at 368.  A lack of evidence in the record that one party had been prejudiced by the other's conduct is grounds to reverse dismissal.  *See Carpenter*, 723 F.3d at 707.  Additionally, a non-violating party's equally dilatory conduct may lessen the weight that courts afford to the prejudice caused by the violating party.  *See Freeland*, 103 F.3d at 1278.

Here, the Court finds that Defendant was prejudiced by Plaintiff's noncompliance.  To begin, Plaintiff should have responded to Defendant's discovery requests by no later than September 21, 2025.  (DN 29, at PageID # 678.)  Although Defendant agreed to an extension of the deadline to respond, Plaintiff again failed to respond to Defendant's discovery requests.  Defendant thus had to spend time and effort just to communicate with Plaintiff concerning his delinquent discovery responses.  But even after the Court set a deadline for Plaintiff to serve his

15

responses by December 18, 2025, Plaintiff failed to comply with *that* deadline as well by failing to serve complete discovery responses, meaning that Defendant had to spend *more* time and money communicating with Plaintiff and then filing its Motion.  But the prejudice goes beyond the time and money Defendant was forced to expend in getting Plaintiff to comply with his discovery obligations.  Plaintiff's failure to provide medical authorizations in time made it difficult for Defendant to obtain records from Plaintiff's healthcare providers during the discovery period. (DN 41, at PageID # 1011.)  Accordingly, the Court finds that Defendant has been prejudiced by Plaintiff's failure.

### c)      Warning

The reviewing court considers whether the district court had warned the sanctioned party that failure to cooperate could lead to dismissal. *Carpenter*, 723 F.3d at 708.  A boilerplate, routine warning that the court may impose sanctions is insufficient to apprise the sanctioned party of the possibility of dismissal.  *Freeland*, 103 F.3d at 1279.  Additionally, the issue of alternative sanctions is often intertwined with the issue of proper notice. *Mulbah*, 261 F.3d at 593.

Here, the Court had sufficiently warned Plaintiff that his conduct could lead to dismissal and other sanctions. (DN 33, at PageID # 685.)  The Court warned Plaintiff that if he continued to shirk his responsibility to participate in discovery, the Court would set an in-person status conference that both counsel and client representatives must attend, and that his conduct could ultimately result in dismissal of the case.  (*Id.*)  But while the Court had sufficiently warned Plaintiff of the consequences of such conduct, the Court had not yet considered lesser sanctions. Dismissal with prejudice is a harsh sanction that courts should only order in extreme cases. *Carpenter*, 636 F.2d at 161.  It is a sanction that is visited upon the client, often for the conduct of the attorney.  As such, the Court will impose a lesser sanction instead.  The Court will order

Plaintiff's counsel and Plaintiff to pay the fees and costs incurred by Defendant associated with its efforts to procure discovery responses from Plaintiff.

### 2. Failure to Disclose

Under Rule 37(c)(1), if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In order to assess whether a party's omitted or late disclosure is "substantially justified" or "harmless," the Court must consider five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015) (citing *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014)).

Defendant does not address whether it was surprised by Plaintiff's late (and incomplete) disclosure of his computation of damages, but the evidence available to the Court would indicate that it was not. As Plaintiff's former employer, Defendant likely has documentation to calculate Plaintiff's front pay and back pay as claimed in his initial disclosures. (DN 34-3, at PageID # 707.) Furthermore, Plaintiff produced wage and income transcripts from years 2021-24, allowing Defendant to determine Plaintiff's income after he was fired. (DN 35-2, at PageID # 776.) Aside from the missing password that Plaintiff eventually provided, Defendant does not suggest that these documents are insufficient to calculate Plaintiff's lost wages. *See Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 800 (6th Cir. 2018) ("[C]ourts must deduct any '[i]nterim earnings or amounts earnable with reasonable diligence by the person … discriminated

17

against' from the plaintiff's back pay award.") (citing *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 623 (6th Cir. 1983)). Nor has Defendant asserted that this information was missing before counsel took Plaintiff's deposition. *See* (DN 37, at PageID # 798.) Although this does not excuse Plaintiff's failure to provide adequate initial disclosures, it does lead the Court to conclude that Defendant was not surprised by Plaintiff's late disclosures. *Kozlowski v. Univ. of Louisville*, No. 3:21-cv-561-DJH-CHL, 2025 WL 4664834, at *3 (W.D. Ky. Mar. 20, 2025) ("A party is not surprised by a belated damages calculation if it had possession of all of the relevant information to calculate damages and damages could be calculated using 'simple math.'") (citing *Howe*, 801 F.3d at 748).

The second and third factors weigh in favor of Plaintiff as well. The trial has not yet commenced, and as such, Defendant would have an opportunity to cross-examine Plaintiff concerning his damages. Such circumstances are sufficient for Defendant to both cure the deficiency and to minimize the impact of the disclosure on trial. *Kozlowski*, 2025 WL 4664834, at *3. The fourth factor weighs in favor of Plaintiff as well given that calculations as to back pay and front pay are often crucial to a plaintiff's case in an employment discrimination action. *See id.*

Finally, the Court considers Plaintiff's explanation for his failure to properly disclose his initial disclosures. As discussed with respect to Plaintiff's failure to completely answer interrogatory 6, the Court is not persuaded by Plaintiff's explanation. But taking all of these factors together, the Court finds that exclusion of the damages calculation is not warranted.

### D. Determining the Sanction

Under Rule 37, a court may issue any just orders to sanction a party for failing to obey an order from the court. Fed. R. Civ. P. 37(b)(2)(A). The court's imposition of a sanction is reviewed

for abuse of discretion. *See NHL*, 427 U.S. at 642. Under Rule 37(b), if the disobedient party fails to demonstrate that their noncompliance was substantially justified, then payment of the opposing party's reasonable expenses is mandatory. Fed. R. Civ. P. 37(b)(2)(C). But such payment must be compensatory, not punitive. *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017) (citing *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826-30 (1994)). An award of fees is compensatory only if it covers the legal bills that the misconduct caused. *Id.* The court must thus establish a causal link between the litigant's misconduct and the legal fees paid by the opposing party. *Id.* To establish a causal link, the court must determine what costs the prevailing party would not have incurred but for the disobedient party's misconduct. *Id.* at 109.

Here, the Court finds that the costs associated with any correspondence between the Parties for the purpose of procuring Defendant's overdue[3] discovery responses and the filing of Defendant's Motion to Compel, his Reply Brief, his Supplemental Motion, and his Reply in support of his Supplemental Motion should be compensated by Plaintiff's counsel.

### E. Allocating the Award

Under Rule 37(b)(2)(C), a court may allocate the cost of the award jointly between the disobedient party and the attorney, or either the party or the attorney alone. Fed. R. Civ. P. 37(b)(2)(C). Rule 37 sanctions must be applied diligently to penalize those whose conduct warranted the sanction and deter those who might be tempted to engage in such conduct absent the deterrent. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64 (1980) (citing *NHL*, 427 U.S. at 643). As such, courts should allocate the sanction between the party and the party's attorney based on whose conduct warranted the sanction. *See Johnson v. Cleveland Heights/Univ. Heights Sch. Dist. Bd. of Educ.*, 66 F.3d 326, 1995 WL 527365, at *3 (6th Cir. Sept. 6, 1995).

---

[3] The Court is defining overdue as discovery produced after the Court's December 18, 2025, deadline.

19

Some of the conduct complained of appears to be solely the response of the Plaintiff's counsel.  Counsel's lack of responsive communication with Defense counsel, his failure to provide a password for password-protected documents, and his failure to produce documents in a categorized manner are the result of Plaintiff's counsel's conduct alone.  But it is less clear to the Court as to whether it is counsel or Plaintiff himself who is responsible for the rest.  Counsel may have provided discovery piecemeal and untimely, but this could either be the result of counsel's failure to timely collect and produce discovery, or Plaintiff's failure to share all responsive documents with counsel.  Counsel may have given deficient responses to Defendant's interrogatories, but this could either be counsel's own failure to completely answer the interrogatory based on information available to Plaintiff, or Plaintiff's own failure to share such information with counsel.  Accordingly, the Court finds that the best solution is to share the costs between Plaintiff and his counsel equally.

### F.      Additional Time to Conduct Discovery

Defendant requests additional time to finish its efforts to collect Plaintiff's medical and employment records.  (DN 37, at PageID # 799.)[4]  Plaintiff does not object.  (DN 39, at PageID # 985.)  Therefore, Defendant's request is granted.

### III.    Order

For the foregoing reasons

IT IS HEREBY ORDERED that:

(1)      The Motion to Compel filed by Defendant (DN 34) is **GRANTED in part**.

---

[4] Defendant has also requested additional time to file a dispositive motion.  (DN 37, at PageID # 799.)  However, Defendant has already filed a dispositive motion.  (DN 38.)  Therefore this request is moot.

(a)    No later than **August 14, 2026**, Plaintiff shall revise all of his responses to Defendant's requests for production, both his original responses and his supplemental responses, to clarify which document is responsive to each request for production.

(b)    No later than **August 14, 2026**, Plaintiff shall revise his initial disclosures and his response to interrogatory 6 to include a computation of his requested damages, specifying each item of damages Plaintiff is claiming, along with the method of computation.

(2)    The Motion to Supplement filed by Defendant (DN 37) is **GRANTED in part**.

(a)    No later than **August 14, 2026**, Plaintiff shall serve his tax returns from 2019 through the present, if he has not already done so.  No later than **August 14, 2026**, Plaintiff shall also file proof with the Court that he has done so.

(b)    No later than **November 27, 2026**, Defendant shall complete all outstanding items of discovery.

(c)    No later than **August 28, 2026**, Defendant may file a motion for an award of fees for any correspondence between the Parties for the purpose of procuring Plaintiff's overdue responses in addition to the filing of the Motion to Compel, Motion to Supplement, and the supporting Reply Briefs.  For purposes of this Order, the Court considers any document produced after December 18, 2025, to be overdue.

August 4, 2026

Colin H Lindsay, Magistrate Judge
United States District Court

cc:  Counsel of record

21